IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 12-418-2 |
| v. | : | |
| | : | CIVIL ACTION |
| MARLON GRAHAM | : | No. 17-3559 |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                  **October 12, 2020**

      Pro se Defendant Marlon Graham collaterally attacks his convictions for conspiring and attempting to rob a fake stash house, and for carrying a gun during a drug crime or crime of violence. He argues his counsel was ineffective, and his firearm conviction should be overturned because recent Supreme Court cases held the definition of a crime of violence is unconstitutionally vague. The Court will deny Graham's motion to vacate, set aside, or correct his sentence without a hearing because the record shows that his attorney was not ineffective, and his firearm conviction is not impacted by recent Supreme Court precedent.

**BACKGROUND**

      Graham and his seven codefendants[1] were caught in a Bureau of Alcohol Tobacco and Firearms sting involving a fake stash house. During the sting, an undercover ATF agent posed as someone who knew of a stash house with ten kilograms of cocaine. A confidential informant put the agent in touch with one of Graham's codefendants, Robert Lamar Whitfield. Whitfield and the agent then organized a robbery of the stash house. On the day of the robbery, July 18, 2012, Graham and the other codefendants arrived to assist. The agent and the Defendants met in a hotel parking lot to plan the robbery. At the hotel, Whitfield told the agent that Graham would be the

---

[1] Graham's codefendants are Robert Lamar Whitfield, Najee Murray, Lafayette Rawls, Jamie Dales, Kareem Long, Kenneth Parnell, and Frank Thompson.

getaway driver for the robbery. Graham said he was willing to have a larger role in the robbery, but he agreed to drive the car.

After ending their meeting at the hotel, the Defendants and the ATF agent drove to a junkyard to ostensibly pick up a car the agent had brought for the robbery. At the junk yard, the Defendants began preparing for the robbery by passing out gloves. Graham also showed some of his codefendants two guns he brought in a brown paper bag. The ATF agent then called in backup and all the Defendants were arrested. On August 9, 2012, all eight Defendants were indicted. While three of Graham's codefendants pleaded guilty, Graham and the other four codefendants went to trial.

On May 22, 2013, the jury convicted Graham of five charges: conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, conspiracy to sell drugs, attempt to sell drugs, and carrying a firearm during a drug crime or crime of violence. According to the jury's answers to special interrogatories on the verdict slip, Graham's firearm conviction was premised on all four of Graham's other convictions. After his conviction, Graham and his codefendants sought discovery on whether they were victims of selective enforcement. They argued they were targeted in the stash house sting because they were all black. The Court denied the motion because it was untimely and because the Defendants did not meet the threshold showing for discovery on this claim. Graham also moved to dismiss his case due to outrageous government conduct, and the Court denied this motion as well. Graham was later sentenced to 15 years in prison.

Graham appealed his conviction and sentence to the Third Circuit. He argued the government had not proven his involvement in the conspiracy because the conspiracy was already underway when he allegedly agreed to participate. The Third Circuit rejected this argument. It explained:

> [A]s long as Graham agreed with the others to try to accomplish the object of the conspiracy (robbing the stash house)—and there was ample evidence that he did, in fact, so agree—it is entirely irrelevant that the conspiracy was well underway by the time Graham joined it.

*United States v. Graham*, 639 F. App'x 152, 154 (3d Cir. 2016). After rejecting Graham's argument, the Third Circuit denied Graham's appeal.[2]

Graham now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He argues his counsel was ineffective because he allegedly: (1) did not request an instruction that the jury must unanimously agree on the predicate crime for Graham's firearm conviction; (2) conceded in Graham's appeal that Graham agreed to rob the fake stash house; (3) delayed in making arguments about selective prosecution and outrageous government conduct; (4) did not challenge the sufficiency of the government's evidence supporting Graham's attempted robbery conviction; and (5) did not request a jury instruction that Graham could be convicted based on only his share of the drugs. Graham also argues his firearm conviction should be overturned because of a change in the law.

**DISCUSSION**

The Court will deny Graham's motion without a hearing because the record shows that Graham is not entitled to relief. Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move to have his sentence vacated, set aside, or corrected if the sentence was imposed in violation of a law or constitutional right such as the right to effective assistance of counsel. In evaluating a § 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141

---

[2] The four other defendants who went to trial with Graham also appealed. Their appeals were likewise denied. *See United States v. Whitfield*, 649 F. App'x 192 (3d Cir. 2016); *United States v. Parnell*, 652 F. App'x 117 (3d Cir. 2016); *United States v. Long*, 649 F. App'x 200 (3d Cir. 2016); *United States v. Thompson*, 639 F. App'x 154 (3d Cir. 2016).

(3d Cir. 2015). When a § 2255 motion is filed, a district court must "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## I.     Ineffective Assistance of Counsel

Graham's counsel was not ineffective. To prove that his counsel was ineffective, Graham must show: (1) his counsel was deficient and (2) he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is deficient when his "representation fell below an objective standard of reasonableness." *Id.* at 688. When deciding whether counsel's representation fell below this standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even when counsel was deficient, a defendant must still show he was prejudiced to succeed on an ineffectiveness claim. A defendant is prejudiced by counsel's behavior when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

None of Graham's five ineffectiveness claims meet this two-pronged standard. Three of Graham's claims do not meet the prejudice prong: Graham was not prejudiced by his counsel's failure to request a jury instruction on unanimity, his counsel's concession in Graham's appeal, and his counsel's delay in raising selective prosecution and outrageous government conduct arguments. Graham's two remaining claims do not meet the performance prong: Graham's counsel was not deficient for failing to raise a meritless challenge to Graham's attempted robbery conviction, and failing to request an incorrect jury instruction on the amount of drugs that should serve as the basis for Graham's conviction. The Court will address each of Graham's five claims in turn.

4

First, because the Court correctly instructed the jury that it had to unanimously agree on the predicate offense for Graham's firearm conviction, Graham was not prejudiced by his counsel's failure to request this instruction. Graham was convicted of carrying a firearm during a drug crime or crime of violence under 18 U.S.C. § 924(c). This statute penalizes carrying a firearm while committing another predicate crime. When two or more crimes could serve as the predicate crime, a judge may instruct the jury that they must unanimously agree on which crime(s) serve as the predicate crime. This unanimity instruction avoids a situation in which some jurors find one predicate crime while other jurors find a different predicate crime. While the Third Circuit has not decided whether this instruction is required, the Second Circuit has opined that a failure to give this instruction is "likely error." *United States v. Gomez*, 580 F.3d 94, 103 (2d Cir. 2009); *see also Richardson v. United States*, 526 U.S. 813, 824 (1999) (holding that a jury must unanimously agree on the predicate crime when a defendant is charged with engaging in a continuing criminal enterprise).

In this case, the Court gave the correct instruction and the jury unanimously agreed on the predicate crimes. While instructing the jury on the firearm count, the Court stated, "[y]ou must unanimously agree on which [predicate] crime or crimes, the defendant committed." Trial Tr. Vol. 8 at 79. In addition to this instruction, the verdict form contained special interrogatories which asked the jurors whether they "unanimously" found Graham carried a firearm while committing each predicate crime. Jury Verdict Form at 13, ECF No. 245. The jurors' answers to these interrogatories revealed that they unanimously agreed Graham carried a firearm while committing all four[3] of the possible predicate crimes. *Id.* Because the jury unanimously agreed to the predicate

---

[3] Due to a change in the law, all four crimes are no longer valid predicates for a § 924(c) conviction. This is discussed in more detail in Section II below.

crimes, and was properly instructed that it must do so, Graham was not prejudiced by his counsel's failure to ask for a unanimity instruction.

Second, Graham was not prejudiced by his appellate counsel's concession that "[w]hile [Graham] may have agreed to participate in the crime, he did not agree, nor did he participate in a criminal conspiracy." *Graham*, 639 F. App'x at 154 n.4 (quoting Graham's appellate brief). While the Third Circuit noted this statement admitted Graham's involvement, that Court did not rely on this admission to deny Graham's appeal. Instead, the Third Circuit concluded that "there was ample evidence" that Graham agreed to commit the crime. *Id.* at 154. Based on this "ample evidence," the Third Circuit would have denied Graham's appeal regardless of his counsel's admissions or concessions. *Id.* Graham was therefore not prejudiced by his counsel's statement that Graham "may have agreed to participate in the crime." *Id.* at n.4.

Third, Graham's counsel's delay in raising his selective enforcement and outrageous government conduct claims was also not prejudicial. Even if these claims had been raised in a timely fashion, they would have been denied. The Court's opinions in this case clarified that Graham's claims were denied both because they were untimely and because they were meritless. Regarding Graham's selective enforcement claim, the Court found Graham was not entitled to discovery on this claim because he failed to meet the threshold showing of discriminatory effect and discriminatory intent.[4] *See* Mem. Op. 14-19, June 27, 2014, ECF. No. 377. Regarding Graham's outrageous government conduct claim, the Court found the government's behavior was

---

[4] After Graham's convictions became final, the Third Circuit decided *United States v. Washington*, which created a more liberal standard for discovery on selective enforcement claims. 869 F.3d 193 (3d Cir. 2017). Graham has not raised this new law in his motion and the Court need not address this issue. The Court notes, however, that the *Washington* decision does not apply retroactively to this case. *See United States v. Parnell*, 2020 WL 4736038, at *5-6 (E.D. Pa. Aug. 14, 2020) (explaining that *Washington* does not apply retroactively to Graham's codefendant, Kenneth Parnell).

not "the kind of 'shocking, outrageous, and clearly intolerable' conduct necessary to establish the 'extraordinary defense' of outrageous government conduct."[5] Mem. Op. 7, Aug. 21, 2014, ECF No. 423 (quoting *United States v. Nolan-Cooper*, 155 F.3d 221, 230-31 (3d Cir. 1998)). Even if Graham had raised his selective enforcement and outrageous conduct claims at the appropriate time, these claims would have been denied. Graham was therefore not prejudiced by his counsel's delay in raising these claims.

Fourth, Graham's counsel was not deficient when he failed to challenge the evidence supporting Graham's conviction for attempted Hobbs Act robbery. To prove a defendant attempted to commit a crime, the government must show: (1) the defendant had the mental state required to commit the crime and (2) the defendant took a substantial step toward committing the crime. *See United States v. Garner*, 915 F.3d 167, 170 (3d Cir. 2019) (refencing Model Penal Code § 5.01). Graham incorrectly argues he did not take a substantial step toward robbing the fake stash house, but the evidence at trial shows otherwise. Graham met with the undercover agent and his codefendants at the hotel to plan the robbery. He then drove to the junkyard to examine the car that would be used in the robbery. He also brought guns to help commit the robbery and showed those guns to his codefendants. These actions constituted a substantial step toward robbing the stash house. *See, e.g., United States v. Rodriguez*, 54 F. App'x 739, 745 (3d Cir. 2002) (finding

---

[5] In his motion, Graham also argues that his prosecution for robbing a fake stash house violates due process. This argument is merely a rephrasing of Graham's meritless outrageous government conduct argument. The Court therefore rejects this argument for the same reasons it rejected Graham's motion in its August 21, 2014, Memorandum. In addition, this argument is procedurally defaulted because Graham could have raised it in his direct appeal but chose not to do so. *See Massaro v. United States*, 538 U.S. 500, 504, (2003) ("[The] general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."); *United States v. Travillion*, 759 F.3d 281, 288 n.11 (3d Cir. 2014) ("[I]ssues which should have been raised on direct appeal may not be raised with a § 2255 motion.").

defendants took a substantial step toward committing robbery when they brought guns and drove to the place where the robbery would be committed); *see also* Model Penal Code § 5.01(2) (explaining that a substantial step can include "possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission"). Therefore, Graham's counsel was not deficient for failing to raise a meritless challenge to the evidence supporting Graham's attempted robbery conviction.

Lastly, Graham's counsel was not deficient when he failed to request a jury instruction limiting Graham's accountability to the share of cocaine he would have personally possessed. In drug conspiracy cases, the jury must determine the quantity of drugs that were the object of the conspiracy, not the share of the drugs that would have been attributed to each defendant. *See United States v. Phillips*, 349 F.3d 138, 142–43 (3d Cir. 2003), *vacated on other grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005) ("In drug conspiracy cases, . . . the jury [must] find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator."). In this case, the jury was correctly instructed that it must find "that the weight or quantity of cocaine *which was involved in the conspiracy* was five kilograms or more." Trial Tr. Vol. 8 at 93 (emphasis added). Similarly, a special interrogatory on the verdict form asked the jury to "unanimously find . . . that the weight of the mixture or substance containing cocaine *that Marlon Graham conspired to possess* with intent to distribute was five kilograms or more." Jury Verdict Form at 3, ECF No. 245 (emphasis added). Graham's counsel could not have objected to this instruction or the related interrogatory because they were correctly focused on the quantity of drugs attributable "to the conspiracy as a whole." *Phillips*, 349 F.3d at 143. Therefore, Graham's counsel was not deficient for failing to make this objection.

## II. Change in Law Regarding Graham's Firearm Conviction

Graham is not entitled to relief from his conviction for carrying a firearm during a drug crime or crime of violence under 18 U.S.C. § 924(c). This statute prohibits a defendant from carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). In other words, a defendant may be convicted under this statute if he uses a gun in connection with either a drug crime or a violent crime. The statute specifies that a drug trafficking crime includes "any felony punishable under the Controlled Substances Act." *Id.* § 924(c)(2). In a separate provision, the statute sets out a two-part definition of crime of violence. *See id.* § 924(c)(3). In *United States v. Davis*, the Supreme Court struck down one of the two parts of the crime of violence definition as unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019) ("[Section] 924(c)(3)(B) [the residual clause of the definition of crime of violence] is unconstitutionally vague."). The Supreme Court's holding in *Davis* had no effect on the validity of the definition of drug trafficking crime. Defendants who were convicted of carrying a firearm during a drug trafficking crime therefore cannot have their convictions re-examined under the *Davis* line of cases. *See United States v. Parnell*, 652 F. App'x 117, 122 (3d Cir. 2016) ("*Johnson* [a precursor to *Davis*] does not call into question the statute's unambiguous definition of 'drug trafficking crime.'").

Here, because the jury unanimously found Graham carried a firearm during a drug trafficking crime, his conviction is not implicated by *Davis*. Graham was convicted of conspiring and attempting to sell drugs in violation of 21 U.S.C. § 846. That statute is part of the Controlled Substances Act, and it therefore qualifies as a drug trafficking crime under § 924(c). In response to special interrogatories in the jury verdict form, the jury found Graham had carried a firearm while committing these crimes. *See* Jury Verdict Form 13, ECF No. 245. Because Graham was

convicted of carrying a firearm in relation to drug trafficking crimes, he is not entitled to relief under *Davis*.

**CONCLUSION**

The record demonstrates that Graham's counsel was not ineffective, and Graham's conviction for carrying a firearm during a drug trafficking crime is not affected by the Supreme Court's decisions regarding crimes of violence. The Court will thus deny Graham's motion to vacate, set aside, or correct his sentence without a hearing. *See* 28 U.S.C. § 2255(b) (a hearing is not required when "[the] records of the case conclusively show that the prisoner is entitled to no relief"). Because reasonable jurists could not disagree about whether Graham is entitled to relief, the Court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 ("Where a district court has rejected the constitutional claims on the merits, the showing required [for a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

An appropriate order follows.

                                                  BY THE COURT:

                                                  /s/ Juan R. Sánchez
                                                  Juan R. Sánchez, J.