IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : NO. 12-418-2 |
| MARLON GRAHAM | : |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                            **January 27, 2022**

Defendant Marlon Graham filed a Pro Se Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) on July 20, 2020.  Graham has failed to show that extraordinary and compelling reasons exist to justify his release and his motion shall therefore be denied.

**FACTUAL BACKGROUND**

Graham was arrested in July 2012 and charged, together with 7 others, with conspiracy to commit Hobbs Act robbery, attempted robbery, conspiracy and attempt to possess with the intent to distribute 5 kilograms or more of cocaine, carrying a firearm during and in relation to a crime of violence/drug trafficking crime, being a convicted felon in possession of a firearm and aiding and abetting.  These charges arose out of an aborted plan to rob a "stash" house in Philadelphia.  Following an 8-day trial, Graham and his co-defendants were convicted of all of the charges against them on May 22, 2013.  Graham was sentenced to 188 months' imprisonment, a five-year period of supervised release, and a special assessment of $500 on August 14, 2014.  The Court later reduced the sentence to a term of 180 months' imprisonment and Graham's conviction and sentence were upheld by the Third Circuit Court of Appeals.[1]  Graham is currently incarcerated at

---

[1] *United States v. Graham*, 639 F. App'x. 152 (3rd Cir. 2016).

FCI Fort Dix and has an anticipated release date of May 26, 2025, having earned some 13 months of good conduct time.

In moving for compassionate release, Graham argues his "health conditions, combined with the unprecedented and extraordinary risk posed by the global COVID-19 pandemic, satisfies the 'extraordinary and compelling reasons' standard under 18 U.S.C. §3582(c)(1)(A)(i)." Def.'s Mot. For Comp. Rel. 1, ECF No. 755.  Graham identifies his " serious health conditions" as asthma and obesity and asserts that as he is a former, 1.5 pack-a-day cigarette smoker and social marijuana user, he is in danger of "an exponentially greater risk of death or irreparable harm" from the COVID-19 virus at Fort Dix.  *Id.,* at 2, 4.  The Government disagrees with Graham's assertions. It notes Graham's asthma is under control, his BMI reflects that he is not obese but is merely overweight, and that Graham was offered but refused the COVID-19 vaccine.  Gov't.'s Supp. Resp. in Opp. to Def.'s Mot. To Reduce Sent. 1, 3-4, ECF No. 824.  The Government further argues Graham is young, he has several disciplinary infractions on his prison record within the last few years, he continues to present a danger to the community, and he has provided no details regarding where he would live if released.  Gov't.'s Resp. in Opp. to Def.'s Mot. To Reduce Sent. 4, 17.  The Government thus asks the Court to deny Graham's motion.

**LEGAL STANDARDS**

As noted, Graham is asking the Court to release him from serving the balance of his 180-month sentence on the basis of the "compassionate release" provisions of 18 U.S.C. § 3582(c)(1)(A):

> **(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –
>
> **(1)** in any case –
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

>administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>>**(i)** extraordinary and compelling reasons warrant such a reduction; or
>>
>>**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>>
>>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

Here, the applicable § 3553(a) factors which must be considered are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A) – (C).

Since passage of the First Step Act amendment permitting individual defendants to file compassionate release motions on their own behalf, the Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A). By its terms, the Policy Statement set forth at U.S.S.G. § 1B1.13[2] is limited to compassionate release

---

[2] The U.S.S.G. § 1B1.13 Policy Statement provides:

3

motions initiated by the Bureau of Prisons. Consequently, the Policy Statement is not binding on district courts considering defendant-initiated compassionate release motions, and courts are free to consider other reasons a defendant raises that are not specifically contemplated in the Policy Statement in determining whether extraordinary and compelling reasons exist. *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021); *United States v. Bayron*, No. 95-338-1, 2021 U.S. Dist. LEXIS 29846, at *8 (E.D. Pa. Feb. 18, 2021). The Policy Statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions. *Andrews*, 12 F. 4th at 260. District courts are vested with discretion in their weighing of the § 3553(a) factors and determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Commentary to the Policy Statement provides that extraordinary and compelling reasons may exist where the defendant is either suffering from a terminal illness, or is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "which substantially

---

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that –

**(1)(A)** Extraordinary and compelling reasons warrant the reduction; or

**(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)** The reduction is consistent with this policy statement.

diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1B. Extraordinary and compelling reasons may also exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id,* cmt. n.1B, or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.,* cmt. n. 1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. On motions for compassionate release, it is the defendant who bears the burden of proof by a preponderance of the evidence. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

Graham has attached to his motion a copy of the Request to Staff form BP-A.148.055 directed to Warden David Ortiz on May 25, 2020 in which he requested "an official compassionate release" for his asthma, BMI of 32/obesity and being a former cigarette smoker and social user of marijuana. Def.'s Mot. for Comp. Rel., Exhibit A, ECF No. 755. Although there is nothing of record reflecting any action on the Warden's part in response, Graham did not file this motion until

5

July 20, 2020 and he therefore satisfied the administrative pre-requisites to moving for compassionate release established in the statute.

Turning to the question of whether the requisite compelling and extraordinary reasons for early release exist here, the Court takes notice of the fact that COVID-19, which was declared a pandemic in March of 2020, continues to sicken millions of people worldwide.  In the United States, there have been a total of some 71,818,876 diagnosed cases of COVID-19 which have resulted in nearly 867,000 deaths to date.  Although some 80.5% of people 5 years and over have received at least one dose of a COVID-19 vaccine, community transmission throughout the U.S. is currently listed as "high."[3]

As this Court has previously recognized, "COVID-19 poses a unique challenge to the prison system." *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020).  In response to the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19.  Mitigation measures include restricting and/or limiting visits such that all were either suspended altogether or were non-contact; restricting the number of visitors allowed, and decreasing the length and frequency of visits; mandating testing and masking of all inmates, staff, and visitors; maximizing social distancing; and mandating frequent cleaning of all facilities, daily symptom and temperature checks of inmates, and quarantining of all new inmates.[4]  The operational status of each institution is determined based on a number of health indicators, including the level of transmission within each institution and in the surrounding community.  Although mitigation measures have been in place throughout the

---

[3]   www.covid.cdc.gov/covid-data-tracker/#vaccineeffectiveness.

[4]   www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

pandemic, the particular interventions in place at a given institution vary based on the institution's operational status.[5]

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19. These include: "heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension," and "immune-compromised state/weakened immune system."[6] The most recent medical records provided for Graham indicate he has a history of asthma and chronic foot pain/plantar fasciitis, and has bilateral bunions for which he was to be evaluated for possible podiatric surgery. His asthma appears to be well-controlled with an albuterol inhaler and he has been prescribed acetaminophen for the foot pain. Gov't.'s Resp. in Opp. to Mot. for Comp. Rel., Ex. A, ECF No. 825. He is 5 feet, 9 inches tall and weighs 190 and is thus considered to be overweight. Graham is now 31 years old and he has been incarcerated for some 10 years, during which he has presumably not smoked either cigarettes or marijuana. The Court therefore concludes Graham's medical conditions do not place him in the CDC's higher risk categories.

Graham is presently incarcerated at FCI Fort Dix in Burlington County, New Jersey, which has a total population of 3,326 male inmates. The prison is currently at the Level 3 operational level meaning it is under the most restrictive COVID-19 procedures with most of its normal operations and visiting suspended or restricted until further notice. Presently, there are 112 COVID-19-positive inmates and 18 COVID-19- positive staff. To date, there have been 2 inmate deaths, and 1,521 inmates and 108 staff have recovered from the disease.[7] Graham's medical

---

[5] www.bop.gov/coronavirus/covid19_status.jsp.
[6] www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[7] www.bop.gov/coronavirus.

records also evince that while he may have tested positive for COVID-19 in November, 2020,[8] with the exception of having a mild headache and loss of taste and smell, he was asymptomatic. Def.'s Pro Se Emerg. Mot. to Amend Prev. Comp. Rel. Mot., Pro Se letters re: Comp. Rel., ECF Nos. 774, 775, 778.  Despite having been offered the COVID-19 and flu vaccines, Graham refused both.  Although the COVID vaccines do not prevent all infections, they have been found to provide strong protection from severe disease, hospitalization, and death from COVID-19, including from the Delta and other variants with effectiveness ratings between 85% and 90%.[9]  The current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant.[10]  Graham is free to avail himself of the COVID-19 vaccine at any time.  In view of all of this evidence, the Court cannot find that Graham satisfies the extraordinary and compelling threshold to warrant granting him compassionate release.

Moreover, the Court must also consider the relevant factors outlined in 18 U.S.C. §3553(a). Graham states he has "tried to become a model inmate and person," who "has immersed himself in his religious studies where he works in the Fort Dix chapel as a Grade 2 employee," and "has taken educational courses including Wellness CPR certification, Beginner Yoga and Smart Investing ACE course."  He also avers he "deeply regrets his crime and has realized through deep thought and prayer how the selling of illegal drugs decimate society."  Def.'s Mot. for Comp. Rel., 16, ECF 755.  If released, he would live with his mother in Philadelphia, who would be a good influence on him.  *Id.*  He also alleges he has two opportunities for employment – either manufacturing airplane parts or as a nursing home attendant.  *Id.*  No information is provided as to

---

[8]  Graham was screened and tested daily for a roughly two-week period between October and November, 2020.  His test results during this time were either inconclusive or negative.  Exhibit A, ECF No. 825.
[9] www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html.
[10] www.cdc.gov/coronavirus/2019-ncov/omicron-variant.html.

where these opportunities are located.  The Government points out that on November 16, 2019, Graham "committed disciplinary infractions for possessing an unauthorized item and interfering with BOP's count of the inmates," and "on January 13, 2015, he refused his work assignment and failed to obey orders."   Gov't.'s Resp. in Opp. to Def.'s Mot. for Comp. Rel., 4, ECF No. 760.  While the Court is happy to hear that Graham now regrets his criminal acts and realizes the harm which they caused, his proofs on these issues is thin to say the least.  In fact, aside from Graham's own assertions, his only documentary evidence is a copy of his transcript showing he has taken just four courses since he was first imprisoned in 2013.  This evidence is simply not sufficient to sustain Graham's burden of showing the existence of compelling and extraordinary circumstances meriting his compassionate release.

The other relevant § 3553(a) factors also do not support compassionate release.  The reasons behind the 180-month sentence imposed were well-founded.  The nature and circumstances of the offense and character and history of this defendant were such that he willingly and freely agreed to participate with 7 others in an elaborate scheme to perpetrate a violent home invasion of a house believed to be that of a known drug dealer using firearms and other weaponry.  Graham was 21 years of age, an adult who knew right from wrong and was fully capable of making this decision by and for himself.  That this was a profoundly bad and dangerous decision was reflected in the sentence given.  This sentence was clearly an appropriate one to recognize the seriousness of the offenses, promote respect for the law and deter future criminal conduct, and to punish this defendant. §3553(a)(1), (2)(A) – (C).   After consideration of the §3553(a) factors and because Graham has not shown himself to be in danger of suffering severe illness or death as a result of COVID-19 and remains free to take advantage of the available and safe COVID-19

vaccine, the Court finds compassionate relief is not appropriate in this case. The motion is therefore denied.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,      C.J.